Dennis Conner for Ms. Speaks, the appellant. This case arises out of a city intersection accident where, according to Mazda, the protege Ms. Speaks was riding in was traveling as slow as 25 miles per hour, and the target vehicle that hit her was traveling as slow as 8 miles an hour. Now as a result of this city intersection accident, Ms. Speaks almost died. She had life-threatening injuries. And by the time of trial, her medical bills were $500,000. And everyone agrees that these life-threatening injuries were caused by her seat belt. Now she claimed that the seat belt was defectively designed, and that was a substantial factor in causing her injuries. Mazda defended with the court in its preliminary instruction right at the outset, telling the jury, defendants deny there is any causal relationship between the alleged design and plaintiff's injuries or damages. Defendants contend instead that at the time of this crash, the shoulder belt was routed under her arm instead of over her shoulder as designed, and that is what caused plaintiff's injuries. Now clearly, and I don't know how anyone can argue otherwise, this is in effect a misuse defense. Now— Counsel, let me just say right off what bothers me about this case is that there's a dearth of law in Montana about strict liability cases. For instance, under Montana's strict liability law, if a manufacturer expects or reasonably foresees that his product is or will be used in a certain fashion, does the manufacturer have a duty to design out or guard against the defects? Why shouldn't we ask the Montana Supreme Court about this? The Montana Supreme Court is clear about it. I don't think that there's any question that needs to be decided. All right. What is clear? It's clear, first of all, misuse is not a defense in this case, absolutely as a matter of law. That's clear because Mazda admits that it was reasonably foreseeable. And so misuse is out as a defense. But with respect, counsel, following up on my colleague, at least as I look at it, Montana law is not clear about the foreseeability issue. It seems to be that if it's reasonably easily foreseeable that in this case the injured party was going to put the seat belt in the wrong place, that they should have designed around it. But it doesn't say that. And so our question is, you've got an issue of Montana law. We could decide it, presumably, but normally we like the state courts to decide state law issues. All right. My colleague has raised the point that I would echo. Does it make sense for us to interstitially fill in the blanks in Montana law? Or should we certify this issue to the Montana Supreme Court and let the Montana Supreme Court decide what its law is on this issue? And that'll be the end of it. Okay. First of all, Justice Nelson asked a very good question. She's a very distinguished colleague, but in the federal court, we're not justices. Well, I've read about her before coming here, and I understand that. I'm sorry you were a subject to that. But let me just say that that was the first part of my answer to Justice Nelson's question. Let me just say, there ain't no justice in the Court of Appeals on the federal side. We're judges. All right. All right. Thank you. So your colleague, Judge Nelson. Someone said there's no justice in the Ninth Circuit, but we don't know that part. No, no, no, no, no. I don't like that joke. I don't like that joke. Anyway. Anyway, what your answer is. Okay. But now let me go to the second part on foreseeability. And I think to answer this, all you need to do is read the decision in Cancer v. Premium Nails Concept, Inc. But so the problem we have, and the problem with that case, of course, is that that's the nail case, right? Right. With getting the stuff on your fingers. And the problem is that, as I think you recognized in your brief, in that case, they make the misuse claim, right? The plaintiff makes the claim. In Cancer, the trial judge says misuse does not apply as a matter of law. He struck the misuse defense. Misuse was not available. And your client has never argued that she misused, you know, it's not a question where she said I didn't get it on my fingers, but if I did get it on my fingers. This client, your client, has said consistently, as I understand it, I did not misuse that seatbelt. Ironically, the evidence of misuse comes in from Mazda's expert. The jury certainly heard a lot of testimony about misuse, alleged misuse. I'm not sure it matters, but it just didn't come from you. It came from the defense team, right? Well, misuse always comes from the defense. A plaintiff never says. Well, actually, in Cancer, the plaintiff did. Sometimes the plaintiff does admit to misusing, right, to getting the stuff on her fingers. It's just a, it's your argument, but if you want to explain to me, do you think that it doesn't matter? I certainly am convinced the jury heard evidence that your client, in fact, did misuse the seatbelt. Right. Right. Right. As a matter of fact, here is the killer argument that. I knew this was a capital case. That's exciting. Okay. What? No, I knew this was a capital case. No, but this was the kill shot. It was the killer argument. Here's what they successfully tell the jury. The shoulder belt was routed under the arm instead of the shoulder as designed, and that is a strong, indeed, an absolute defense. If the shoulder belt was routed under the arm, plaintiffs cannot prove their case. Well, because, and we understand, the judge was very clear that Mazda's theory, that your client, in fact, routed the seatbelt improperly, went to causation, right? And the jury was only supposed to consider it for causation. It seems to me the jury hears it, and the problem I have with the case is once they hear it, they need an instruction that tells them what to do with it, what to do with this misuse of evidence. Exactly. Exactly. And that finishes my argument, then, to Judge Nelson's question. And when you read Kinzer, and this is from paragraph 33 of the opinion, the court's refusal to instruct the jury that it was foreseeable to PNC that nail technicians would get the nails, the vapor was an abuse of discretion as well. And so when it comes to the issue of foreseeability, the Montana Supreme Court said in Kinzer one of the reasons they reversed is because the jury was not fully instructed that it was foreseeable to the defendant in this case that that might happen. There were a couple of different mistakes made in Kinzer, though, right? Well, that's just one. There were other mistakes in Kinzer's two. Can you point out which instruction you think, what's your strongest argument, that there was an instructional error? Okay. The strongest argument is instructional errors. What did the court tell them? So am I supposed to look at 47 and 48, or which instructions do you want me to look at? Our instructions, not 47 and 48, but I would say 45 and 46. Okay. And beginning with the first court's instruction. Now. Well, this is the instruction you sought. These are instructions we sought. But remember, first of all, this is a case where the court on its own instructed. It didn't accept our instruction. It didn't accept Mazda's instructions. It gave its own instructions. Right. So just to be clear, is your strongest, I've asked for your strongest instructional error argument, is it that you think you should have been given number 45, that the judge was wrong to not give your number 45? That's our strongest argument is not necessarily the denial of any one instruction. Okay. Our strongest argument is that he had to fully and fairly instruct the law on misuse. And he didn't give any instruction at all on misuse. That's. Well, they're going to get up and they're going to say the reason that there wasn't a misuse instruction is because you got the pretrial ruling that you got. Right? So do you want an opportunity to respond to that now? I'm not. Could you repeat the question, Your Honor? I want to make sure I understand. You asked the court to rule pretrial that your client's misuse, if misuse, was foreseeable. And I think the judge ruled, in fact, they did, Mazda did foresee it. Right? Right. Okay. But then, but then what the court said when you looked at his ruling, his initial ruling, he says, if, among other things, the jury is instructed that routing the shoulder under the arm is neither misuse nor negligence, and any evidence of under the arm routing is submitted only for the purpose of allowing Mazda to contest the element of causation, such evidence may be admitted. So this is how the court started in its order on summary judgment, saying, if I instruct the jury that the shoulder belt under the arm is neither misuse or negligence, then they should be able to allow to go with this defense. And then when we came to trial, we saw this coming, and we said, you better take a look at Kinzer. Here's our pretrial order. This is where we're going to have big problems in this trial. And you wanted instruction 45. Yeah. And 45 parrots what he said in the pretrial order, in his pretrial orders. But then we get to start arguing in these instructions, and he starts with an instruction that discusses both misuse and negligence, and Mazda effectively argues, judge, you're telling the jury too much. You're telling the jury too much if you tell them this. And so now misuse comes completely out of the judge's instructions, and now he's just talking about negligence. And so he ends up just saying, because this is what we call a strict product liability case, negligence of either party isn't relevant, just leaves it at that. And then he compounds the error by, when he was afraid of telling them too much about misuse, he goes on to give a mere happening of an accident instruction, which had been condemned by the Montana Supreme Court on its own, without even an appellate raising that point, which adds to our problems. And then, of course, he says, all the things that you want to talk about there in your proposed instruction number 45, stay away from them. You can't cross-examine about it. You can't argue it. You can't produce evidence about it, which is contrary to the very decision that he made in striking the defenses of misuse. Counsel, your brief, the court concluded, quote, foreseeability, I think he meant in context of the seat belt misuse, but anyway, foreseeability is out of this case. Right. How many times did he instruct the jury that they should not consider misuse of the seat belt? He didn't use the word misuse at all. Did he talk about, I think that's right, routing the seat belt? Yeah. Was the jury, this is what I'm trying to really ask, was the jury told repeatedly not to consider the way the seat belt was routed? No. He didn't say anything about not to consider the way the seat belt was routed. He just instructed them on their defense. So he just limited his instructions to, quote, unquote, foreseeability, without explaining foreseeability of what? He didn't talk about foreseeability at all. He said foreseeability didn't come in the case. The only thing he instructed the jury on is that. He instructed the jury that foreseeability was out of the case. No, he instructed us as lawyers. Oh, forgive me. He ruled that foreseeability is out of the case. Okay. He instructed us to stay away from every argument that we were trying to make in our instruction 45. Okay. And the only instruction he gave on the seat belt at all is that they denied, defendants denied there's any causal relationship between the alleged defect and plaintiff's injuries or damages. Defendants contend instead that at the time of the crash, the shoulder belt was routed under the arm instead of over the shoulder as designed, and that's what caused the injury. That's the only thing that he talked about when it came to routing the seat belt. Didn't he say the testimony you are about to hear or just heard regarding plaintiff routing the belt under her arm may be considered only for the limited purposes of allowing defendants to contest plaintiff's contention that improper fit of the restraint system caused her injuries and for no other purpose? Yes. Okay. I thought I just asked that. I think we miscommunicated, but thank you for the clarification. Yes, yes, yes. We have a number of questions by my colleagues. Your time is up, Counsel. Oh. Yeah, we appreciate your argument. Wow. All right. Thank you. Thank you very much. Time flies. It does indeed. It does indeed. So Mr. Carey, is it? Yes, Your Honor. Good morning. May it please the Court, Counsel, Michael Carey, Wendy Lunamish, and Ron Bender on behalf of Appelese, the Mazda defendants. There are three reasons to affirm the lower court's judgment. Mazda's causation defense was proper under Bell v. Glock. Mazda never overstepped the boundaries of that ruling, and the court was well within its discretion in fashioning the language of its limiting instruction, the one that Your Honor just read. Finally, plaintiff's mischaracterization of Mazda's causation defense does not justify introduction of instructions and evidence on misuse or foreseeability. Counsel, can you point to me any Montana law under strict products liability law that if a manufacturer expects or reasonably foresees that his product is or will be used in a certain fashion, does the manufacturer have a duty to design out or guard against defects associated with such law? Yes, Your Honor. There's a long line of cases in Montana. What is the case that you're referring me to? Starts with Neuville, Plum, and then we get into Lutz v. National Crane, and Kenzer. All those cases do stand for that proposition, but that's not at issue in this case. That gets to the point of . . . No, it's not an issue in this case. That's correct, Your Honor, and the reason for that is misuse and foreseeability never found their way into this case. This case was premised on the claim that the plaintiff was wearing the seatbelt over her shoulder as it was designed. Well, your experts, the defense argued, and the jury certainly heard evidence that your theory was that she did misuse the seatbelt, right? No, Your Honor. Our evidence was that the seatbelt fit did not cause the injury. Now, yes, the facts of what actually caused her injury and the facts of what somebody might characterize as misuse are the same facts, but that's inherent in the nature of the defense. Counsel, it really feels like you're not answering my question and being candid. I'll go through the record again, but my clerk and I have combed through it. So I'm just trying to get at whether or not your experts introduced evidence or perhaps fact witnesses introduced evidence about the bruising and so forth from the seatbelts to suggest to the jury that the belt was misrouted. Am I wrong about that? No, not at all, Your Honor. You're not wrong at all, and what it comes down to is a characterization of that evidence, and what the district court or the trial court permitted under Bell v. Glock is for Mazda to negate causation. We had to be very careful not to say misroute or misuse or anything that would characterize plaintiff's conduct and bring in her negligence to the case because that's not permitted under Montana law. Right. It's not permitted under Montana law, and it seems really fair game, of course, for Mazda to run hard at the causation element, of course. My concern is that meant inevitably that the jury heard this evidence, and that was fair game for them to hear it, but where's the instruction that tells them what to do with it? It's the instruction Your Honor read, and it's a limiting instruction that was properly formulated by the lower court, and basically what it said is you can consider this evidence of how the seatbelt was routed only for the limited purpose of determining whether a fit was specifically going further. The court said negligence of either party is not at issue in this case, and that's exactly right, and that's well within his discretion. But negligence, of course, really is a term of art, and there's a bunch of different elements packed in there, and you and I use that term all the time, but I'm concerned about communicating to the jury what they were supposed to do with that. Right, and the court was pretty careful in its, it addressed this at least six different times throughout the trial with argument from counsel on both sides each time, and ultimately it made this determination about what that limiting instruction was going to be and didn't go further, and the reason it didn't go further in formulating additional instructions, the type of instructions that the plaintiff was asking for, is it because it felt, and I'm quoting the record at ER 54, that there was a risk of saying too much, that it would draw too much focus to the concepts of negligence and misuse, and that it might conflate the liability defense, negligence, and misuse, which are not available in this case with the defendant's causation defense. Well, what about, I appreciate that, and I've looked long and hard at that, and I know this judge was, this is a tough position for this trial court judge, I think he's trying to thread a needle. Opposing counsel argues that the proffered instruction 45, I think, parrots the pretrial ruling, parrots the pretrial ruling, and I think it is an uncontested statement about what misuse means in Montana law. What would have been the problem with giving them that? I think you can do it in one sentence. The problem with giving them that is exactly what I just articulated. The court was concerned that you'd have this sort of confusion that arose in Kenser where the jury didn't know what to do with misuse or foreseeability. Okay, but I've got the same concern here. They heard the evidence because Mazda, well within its rights, introduced the evidence, and so where was the jury supposed to look? To say that it's out of the case isn't very helpful. It's in. The evidence was in. And that's fair, Your Honor. What the jury was supposed to do is follow the court's limiting instruction. That's all the jury could do, and that's all the trial court could give in this instance because the case wasn't predicated on a foreseeable misuse causing the injury. It was predicated on it being used as designed. And so with that, if you have evidence that negates that, as Bell v. Glock states, you have two competing tenants of law here. You have the Newville, Plum, and Lutz line of cases, and then you have our kind of case, which is, as I said, predicated on used as designed. And so . . . If I understand you correctly then, you're saying that the plaintiff never pled misuse or foreseeability. You all brought that in, but the judge had to carefully limit how the jury used that so as to avoid the very problems that the judge was trying to avoid. And you think that Instruction 45 did that, no harm, no foul? The Instruction 45 wasn't given as proposed because that contained some additional concepts that the court was reluctant to give. What the court finally gave is Instruction T2, which was read by Judge Christian, is the actual instruction, and it covers the concepts that needed to be covered given the competing tenants of law here. And in a case like this, where as Your Honor pointed out, plaintiff not only didn't plead foreseeability, there was nothing in the court's introduction. The plaintiff's opening statement contained nothing about this alternative theory that you read about in their brief. There was nothing in plaintiff's case in chief about even if she had had it under her arm. There was no cross-attempted, actually attempted, or suggested, or proffered of any of Mazda's witnesses. There was . . . On that point, I think he told them not to, right? And he complimented both of you for staying inbounds, no? The only time that, and then the quote that counsel stated up here at the podium a few minutes ago, where they were told to stay away from foreseeability, was just prior to closing arguments. And it was . . . Well, but he said, I thank you both for . . . I read this earlier in the transcript. He said, I want to thank you both for . . . Steering clear of . . . Yes, that he had made a pre-trial ruling and he thanked you both, and I think really complimented both of you for abiding by it. Is that not a fair characterization? And that's right. And abiding by it meant not using terms like misroute, or improper, or negligence, or anything that would suggest or blame a plaintiff for having put the seatbelt on under her arm. And that's what he had complimented on. Given the facts of this case, as opposed to the general rule of Montana law, I gather it's Mazda's position that given these facts, there's no new law needed from the Montana Supreme Court, that the law that is there is adequate? That's correct, Your Honor. When you look at what the plaintiffs didn't present, the limited way in which the evidence that you suggested was used, that the law is clear? Yeah, the law is clear. I mean, what we're really talking about is the prima facie element of causation. And that's not disputed in Montana. A plaintiff has to prove that, and if the facts disprove that, and those facts are elicited by the defendant in the case, then that's something that's fair game. We don't get into a To follow up on this question, we all agree that Montana law should apply. My law clerks and I spend a lot of time looking at Montana law. And we looked at cases like Lutz and Kenser, Lutz saying, if the manufacturer reasonably foresees that its product can be misused in a certain fashion, that the offending misuse is reasonable, then the manufacturer does not have the benefit of a defense which exonerates or mitigates its breach of duty and its wrongful conduct in failing to design out or guard against the defect. What you are saying is they did not plead foreseeability. Yes, Your Honor. And not only did they not plead it, but it was never presented in any fashion during the case. And not because the court prohibited them from doing so. It was never proffered. It was never suggested. What counsel has argued for is that as an alternative theory, they wanted to be able to argue in their closing based on these jury instructions that they've requested, that well, even if you find that our client was wearing the seatbelt under her arm, we should still be able to recover. Sort of assuming that because of the injury, the resulting injury, and the fact that there was this duty, as the court just noted, that that would mean liability. But we didn't have any evidence. We didn't have any testimony that, for example, Mazda failed to design out or guard against this or warn against it or anything like that. Just as the lower court said, was not presented in this case. They tried the case on the theory that the seatbelt, as worn over the shoulder, was defective. Inherent in a seatbelt defect claim is the concept that it is worn over the shoulder. And so as soon as you take that away by showing facts that disprove that, compelling unrebutted facts, you disrupt the causation. And that's what the lower court allowed Mazda to do, consistent with Bell v. Glock. And that's what the limiting instruction that the lower court fashioned was appropriate in limiting the juror's purview of viewing that evidence for. It didn't want to go any further into these other concepts because it didn't want to have the same sort of problem that was faced in Kenzer. In Kenzer, you have a situation where, similar to this, they excluded the misuse defense. And then, despite that exclusion, the defendant were allowed to put in industry reports, these fingernails. Well, that was contrary to the lower court's ruling. And so this evidence got in there. And then, compounding that, you had a situation where the defendant, or the plaintiff, was not allowed to cross-examine PNC's witnesses, that's the defendant, about the foreseeability of getting nail polish on your skin or inhaling it. And then, after those two errors, the court could have corrected it with a jury instruction that would have instructed the jury, okay, you've heard evidence about this misuse from the defendant, but they have a duty to guard out and design against it. With that compounding confluence of errors, which is a term that the court used, they found that it needed to be reversed because you had all this confusion for the jury and it didn't fit the facts of the case presented on what the misuse defense was that resulted in a reversal. It was a fact-specific inquiry, and there's no broad concept or legal proposition that we can take away from Kenzer that would apply to this case. We have a totally unique situation, more akin to Bell v. Glock, where the premise of the claim is that it was being used as designed, unlike in Kenzer. And if you demonstrate factually that it was not used in a way that was consistent with its design, and that's in fact what caused the injury, without blaming or assigning fault to anybody, that's permitted under Montana law, and that's the limiting instruction that the lower court gave to the jury. And when we talk about the lower court's instructions, we're talking about abusive discretion. The lower court was there. It had the vantage point of hearing all the evidence, of seeing the jury react to the witnesses, and understanding where they were at and what was going on with the case. And in its discretion, determined that this sort of limiting instruction was appropriate so as not to confuse the jurors. Counsel, I'm going to read a little bit blurb here, too, because I want to give you a chance to respond. This is from the transcript, and the Plaintiff's Counsel said, the court clearly instructed the plaintiff not to get into issues of foreseeability, and I think we abided by what the court told us on that point. We did not get into question whether it was foreseeable to the manufacturer that a plaintiff would put the arm under the belt. The questions that we got into with the witness during the deposition. And the judge responded, I appreciate the fact that the plaintiffs didn't, in cross-examination, get into that subject, because that was my request, that you not do so, and you've been steadfast in avoiding that subject. I have two questions. Is it your recollection that this is the statement that happened just before closing? That one happened previously. There's another one right before closing. Okay. And thank you. And when he says, you've been steadfast in avoiding, that was my request, he says, is he referring to a request that he made pre-trial, and if so, how much before trial? The summary judgment order was issued in June, and then we had a pre-trial brief and pre-trial conference in the days before and weeks before. And the trial started when? October. Okay, so several months earlier, he made the summary judgment ruling. Yes. Thank you. And that's not on appeal. Oh, right, right, right. See, my time is up. For the reasons I've stated, we ask that the Court affirm the lower court's judgment. Thank you. Any other questions? No. Thank you both for your argument. We appreciate it. Excellent, excellent.
judges: D.W. Nelson, M. Smith, Christen